UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re                                                               Case No. 22-31114-CLH
                                                                    Chapter 13
CARYN D. WHITE,

    Debtor.
_____

CARYN D. WHITE,

    Plaintiff,

v.                                                                  Adv. Proc. No. 23-03020-CLH

THE BUSH LAW FIRM, LLC,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

On January 25, 2024, this matter came before the Court on the Plaintiff's Motion for Leave to File Amended Complaint for Monetary Relief for Damages, Other Relief, and Demand for a Jury Trial (the "Motion for Leave") filed by Caryn D. White (the "Debtor"). [Adv. Pro. Doc. No. 19].[1] Upon consideration of the evidence presented and the arguments of the parties, and for the reasons set forth below, the Motion for Leave is DENIED.

### I.    Jurisdiction

The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered by United States District Court for the Middle District of

---

[1] "Adv. Pro. Doc. No." refers to the docket number for a filing in the instant adversary proceeding, Adversary Proceeding Number 23-03020.

Alabama on April 25, 1985. Venue is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## II. Background and Procedural History

On March 17, 2017, the Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code.[2] The Debtor listed Clanton Furniture Company, Inc. ("Clanton Furniture") as a creditor. [Case 17-30788 Doc. No. 1, p. 23].[3] Clanton Furniture was provided notice by mail of the Debtor's Chapter 7 case. [Case 17-30788 Doc. Nos. 6 and 7]. On July 5, 2017, the Court entered an Order of Discharge and closed the Debtor's case. [Case 17-30788 Doc. Nos. 11 and 12]. Clanton Furniture was provided notice by mail of the discharge. [Case 17-30788 Doc. No. 13, p. 3].

On December 7, 2018, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code. [Case 18-33505 Doc. No. 1].[4] During the Chapter 13 case, Clanton Furniture engaged in collection activity against the Debtor, including phone calls and a "past due" statement indicating that the Debtor still owed $4,548.20. [Case 17-30788 Doc. No. 18]. The Debtor conferred with Brock & Stout, LLC ("Brock & Stout") – which had been employed as the Debtor's primary bankruptcy counsel in her Chapter 13 case – regarding Clanton Furniture's actions. Brock & Stout referred the Debtor to Anthony B. Bush, who is "Of Counsel" to Brock & Stout and routinely handles bankruptcy litigation matters. The Debtor and Mr. Bush connected via telephone, and the Debtor decided to proceed with a cause of action against Clanton Furniture.

On March 18, 2019, Mr. Bush filed an Application for Employment of Professional Person for a Specific Purpose (the "Application"). [Case 18-33505 Doc. No. 20]. In the Application, Mr.

---

[2] All references to the "Code" or the "Bankruptcy Code" are to 11 U.S.C. §§ 101-1532.
[3] "Case 17-30788 Doc. No." refers to the docket number for a filing in the Debtor's Chapter 7 Case, Case Number 17-30788.
[4] "Case 18-33505 Doc. No." refers to the docket number for a filing in the Debtor's Chapter 13 Case, Case Number 18-33505.

Bush sought to be employed for the purpose of pursuing claims and causes of action against Clanton Furniture for violations of the discharge injunction in the Debtor's prior Chapter 7 case. *Id.* at p. 1. Mr. Bush disclosed that he was "Of Counsel" to Brock & Stout and described the terms of his firm's compensation with respect to his employment:

> The compensation of undersigned counsel is requested on the following basis: attorney fees in an amount equal to fifty (50) percent of the total recovered proceeds plus any incurred expenses. In the event fees are sought and awarded, if such fees are less than fifty (50) percent of the total recovered proceeds, the undersigned counsel is entitled to an offset against the total recovered proceeds to bring his fee to a total of fifty (50) percent of the total recovered proceeds.

*Id.* at p. 2.

Mr. Bush attached an affidavit to the Application (the "Affidavit"), in which he, again, disclosed that his firm would be compensated with a contingency fee of "fifty (50) precent of the total recovered proceeds." [Case 18-33505 Doc. No. 20, Exhibit A, p. 2]. The Affidavit further described the scope of Mr. Bush's employment, which included: prosecuting the matter against Clanton Furniture; communicating with the Debtor and Brock & Stout regarding the matter; advancing expenses necessary to prosecute the matter; preparing and filing necessary motions and responses; arguing and defending the motions at hearings; and preparing and providing settlement documents as required. *Id.* at p. 3. The Affidavit disclosed that in the absence of complex or extensive litigation, Mr. Bush would receive 70% of the total attorneys' fees paid, with Brock & Stout to receive the remaining 30%. *Id.* The Certificate of Service attached to the Application indicated service on "All Parties of Record" via CM/ECF, but there is no evidence on the record that Mr. Bush served the Application on the Debtor. [Case 18-33505 Doc. No. 20, at p. 3].

The Bankruptcy Administrator recommended approval of the Application. [Case 18-33505 Doc. No. 24]. No parties in interest objected to the Application, and on April 12, 2019, the

Court entered an order approving the Application [Case 18-33505 Doc. No. 25].  This order was served on the Debtor by U.S. Mail on April 14, 2019.  [Case 18-33505 Doc. No. 26].

On February 27, 2019, the Debtor moved, through The Bush Law Firm, LLC (the "Firm"), to reopen the Chapter 7 case.  [Case 17-30788 Doc. No. 14].  The Court granted the motion to reopen on March 15, 2019 [Case 17-30788 Doc. No. 16].  On March 18, 2019, the Debtor filed a Motion for Contempt and Motion for Sanctions for Violations of Discharge Injunction (the "Sanctions Motion") in connection with Clanton Furniture's post-discharge collection efforts against the Debtor.  [Case 17-30788 Doc. No. 18].  Clanton Furniture did not file a response to the Sanctions Motion.

Mr. Bush's business records reflect that on April 19, 2019, his office uploaded to its case management system a Hybrid Contingency Fee Employment Contract (the "Contingency Fee Agreement") signed by the Debtor.  [Adv. Pro. Doc. No. 10, at pp. 33-35].  Paragraph 2 of the Contingency Fee Agreement sets forth the same terms of compensation as the Application.  *Id*. at p. 33.  Paragraph 13 of the Contingency Fee Agreement permits Brock & Stout to refer the matter to other counsel and split any attorneys' fees with such counsel.  *Id*. at p. 36.  A "Federal Fee Shifting Addendum" to the Contingency Fee Agreement again clarifies that the attorneys would recover 50% of the total award, even if the attorneys' fees awarded in any judgment or order was less than 50%. *Id*. at pp. 34-35.

On April 30, 2019, the Court held a hearing on the Sanctions Motion.  The Debtor and Mr. Bush were present for the hearing, but Clanton Furniture did not appear.  On May 6, 2019, the Court entered an order granting the Sanctions Motion (the "Sanctions Order").  [Case 17-30788 Doc. No. 21].  The Sanctions Order awarded the Debtor damages in the amount of $3,000.00 and

attorney's fees in the amount of $1,300.00, for a total judgment of $4,300.00. *Id.* The Sanctions Order was served on the Debtor via U.S. Mail on May 8, 2019. [Case 17-30788 Doc. No. 22].

On March 17, 2021, Brock & Stout amended the Debtor's schedules in her Chapter 13 case to include and claim as exempt 50% of the amount awarded in the Sanctions Order ($2,150.00). [Case 18-33505 Doc. No. 29]. These amendments are consistent with the agreement that the attorney's fees to be retained by the Firm would be $2,150.00 as contemplated by the Contingency Fee Agreement, not the $1,300.00 award set forth in the Sanctions Order. *Id.* These amendments also coincide with the beginning of a payment plan negotiated by Mr. Bush, pursuant to which Clanton Furniture was to remit four equal monthly installments of $1,075.00 to satisfy the Sanctions Order. [Adv. Pro. Doc. No. 10, at p. 71].

On July 1, 2021, the Debtor signed a Disbursement of Funds Authorization (the "Authorization"). [Adv. Pro. Doc. No. 19, at pp. 36-37]. The Authorization itemizes $2,150.00 as "Attorneys' Fees, 50% Contingency Fee" as a deduction from the $4,300.00 "Gross Settlement." *Id.* at p. 36. The Authorization contains an Acknowledgment, stating:

> I have read the foregoing Disbursement of Funds Agreement and fully understand the same. I acknowledge that my claim was handled satisfactorily by my attorney, Anthony B. Bush, Brock & Stout, LLC, and The Bush Law Firm, LLC. I further acknowledge that my claim was settled with my authority and that the above disbursements were made pursuant to the employment contract with my attorney.

*Id.* at p. 37. The Acknowledgement was signed separately from the Authorization and dated July 1, 2021. *Id.* The Authorization and Acknowledgement were signed only after Mr. Bush secured the final installment payment from Clanton Furniture in June of 2021. [Adv. Pro. Doc. No. 10, at p. 71].

The Debtor and the Firm exchanged emails between July 23, 2021, and July 27, 2021, with respect to the Sanctions Order and the disbursement of $2,150.00 to the Debtor. *Id.* at pp. 63-74.

In the email exchange, the Debtor requested a copy of the Sanctions Order from the Firm. *Id*. at. p. 74. The Firm sent a copy of the Sanctions Order to the Debtor on July 26, 2021. *Id*. at p. 73. However, the Court had served a copy of the Sanctions Order on the Debtor over two years prior, on May 8, 2019. [Case 17-30788 Doc. No. 22]. The email exchange reflects that Mr. Bush and the Debtor had a telephone call on July 26, 2021, followed by an email from Mr. Bush to the Debtor that referred to the Contingency Fee Agreement and explained why he did not believe the Debtor was entitled to amounts exceeding the $2,150.00. [Adv. Pro. Doc. No. 10, at pp. 70-71]. In subsequent emails, the Debtor asserted that she did not sign the Contingency Fee Agreement until some time in 2021, and Mr. Bush responded that the agreement "was scanned into our computer system or database at 9:17 a.m. on 04/19/2019 and is 1.227 KB in size so it was signed prior to that date." *Id*. at. 67-70.

On June 24, 2022, the Debtor moved to voluntarily dismiss her Chapter 13 case. [Case 18-33505 Doc. No. 30]. The Court granted the Motion by order dated June 27, 2022. [Case 18-33505 Doc. No. 31]. The Debtor filed another Chapter 13 case on June 28, 2022. [Case 22-31114 Doc. No. 1].[5] Brock & Stout filed a motion to withdraw as counsel, and the Court granted the motion on October 6, 2023. [Case 22-31114 Doc. Nos. 39, 49].

### III. The Instant Adversary Proceeding

On July 25, 2023, the Debtor commenced a lawsuit against the Firm in the Small Claims Court of Chilton County, Alabama on July 25, 2023 (the "State Court Lawsuit") by filing a complaint against the Firm (the "Complaint"). [Adv. Pro. Doc. No. 10, at pp. 3-4]. The Complaint seeks a judgment of $850.00, plus filing fees, against the Firm. *Id.* at p. 3. The amount of $850.00

---

[5] "Case 22-31114 Doc. No." refers to the docket number for a filing in the Debtor's Chapter 13 Case, Case Number 22-31114.

- 6 -

represents the difference between half of the $4,300.00 total amount awarded in the Sanctions Order ($2,150.00) and the amount designated as an award of attorneys' fees in the Sanctions Order ($1,300.00). *See Id*. The Debtor alleges in the Complaint that the Firm never reviewed the contingency fee arrangement with her and that there never was a signed agreement between them. *Id*. at p. 4. She further alleges that she requested a copy of the signed Contingency Fee Agreement and never received one. *Id*. Finally, she cites the Model Rules of Professional Conduct with respect to the scope of representation and contingency fee arrangements. *Id*.

On August 15, 2023, the Firm filed a motion to dismiss the Complaint (the "Motion to Dismiss"). *Id*. at pp. 17-37. In the Motion to Dismiss, the Firm refers to the Application and related order, the Contingency Fee Agreement, the Authorization, and the Acknowledgment. *Id.* at pp. 17-20. The Firm asserts that dismissal is appropriate on multiple grounds, including: a) expiration of the two-year statute of limitations under ALA. CODE § 6-5-574 for legal service liability actions; b) lack of subject matter jurisdiction due to the expiration of the statute of limitations; c) improper venue, given that the Firm is organized in Montgomery County and the lawsuit was filed in Chilton County; d) failure to state a claim, as the Debtor signed the Contingency Fee Agreement and Authorization and did not object to the Application; and e) lack of standing, because the Debtor did not list the claims against the Firm in her schedules in her current Chapter 13 case. *Id.* at pp. 20-22.

On August 22, 2023, the Debtor filed a response to the Motion to Dismiss (the "Response"). *Id*. at pp. 47-84. With respect to the statute of limitations, the Debtor argues that the statute of limitations does not bar her complaint because it was filed within two years of July 26, 2021, which is the date she emailed the Firm's office to ask for a copy of the Sanctions Order. On the issue of venue, the Debtor cites federal statutes related to bankruptcy jurisdiction.

Regarding the failure to state a claim, the Debtor argues that the Contingency Fee Agreement was signed after the Sanctions Order, so the Contingency Fee Agreement is not enforceable. With respect to standing, the Debtor does not address the failure to include claims against the Firm as an asset in her current Chapter 13 case.

On August 24, 2023, the Debtor filed a notice of removal of the State Court Lawsuit to this Court. [Adv. Pro. Doc. No. 1]. The Firm did not file a motion to remand the State Court Lawsuit within the time limit imposed by 28 U.S.C. § 1447(c), and at status hearings on October 26, 2023 and November 30, 2023, the parties indicated their preference to proceed in this Court. Accordingly, on December 4, 2023, the Court set the Motion to Dismiss for hearing on January 30, 2024. [Adv. Pro. Doc. No. 16].

On December 22, 2023, the Debtor filed the Motion for Leave, seeking to amend the Complaint to add defendants and claims, as well as to demand a trial by jury. [Adv. Pro. Doc. No. 19]. The Debtor attaches a proposed amended complaint (the "Amended Complaint") and cites Rule 15 of the Federal Rules of Civil Procedure, which applies in adversary proceedings pursuant to Rule 7015 of the Federal Rules of Bankruptcy Procedure. *Id.* Whereas the Complaint simply stated that the Debtor was owed an additional $850.00 under the Sanctions Order and referred to a violation of the Model Rules of Professional Conduct, the Amended Complaint seeks to include additional facts and alleges wrongdoing – either directly or vicariously – by the Firm, Brock & Stout, Mr. Bush, and Christopher Stanfield. *Id.*

After restating assertions included in the Motion to Dismiss and the Response, the Debtor discusses agency relationships and alleges that Brock & Stout and the Firm are principals that are vicariously liable for the acts of Mr. Stanfield and Mr. Bush, respectively. *Id.* "New Count III" of the Amended Complaint alleges "Legal Malpractice-Breach of Fiduciary Duty" and appears to

- 8 -

Case 23-03020 Doc 24 Filed 01/29/24 Entered 01/29/24 12:01:15 Desc Main
Document Page 8 of 16

allege a breach of fiduciary duty in connection with the proposed defendants' representation of the Debtor in her bankruptcy case and the Sanctions Motion, although it cites Alabama Code provisions related to decedents' estates, namely ALA. CODE § 43-2-840. *Id.* "New Count IV" of the Amended Complaint alleges "Legal Malpractice-Fraud Misrepresentation of Material Facts" related to the proposed defendants' representation of the Debtor in her bankruptcy case and the Sanctions Motion. *Id.* "New Count VI" of the Amended Complaint alleges "Legal Malpractice-Conversion" in connection with the proposed defendants' representation of the Debtor in her bankruptcy case and the Sanctions Motion, citing ALA. CODE § 6-5-260 for the proposition that the proposed defendants deprived her of money to which she is entitled. *Id.*

In the proposed Amended Complaint, the Debtor states that she is "removing the original claim in this case and does not seek such relief regarding ethical violations." She now seeks "disgorgement of Defendants' ill-gotten gains for all claims mentioned" and indicates that the "monetary relief sought is all legal filing fees, postage fees, copying fees, mental anguish, punitive damages." *Id.*

### III. Legal Analysis and Conclusions of Law

A.   *Applicable Standard for Amendments to Pleadings*

Rule 15 of the Federal Rules of Civil Procedure applies in this adversary proceeding pursuant to Rule 7015 of the Federal Rules of Bankruptcy Procedure. The Motion for Leave cannot be granted as a matter of course because the Debtor did not amend the Complaint within 21 days after serving it, nor did she amend the Complaint within 21 days after the Firm's service of the Motion to Dismiss. FED. R. CIV. P. 15(a)(1). Accordingly, the Debtor may amend the Complaint "only with the opposing party's written consent or the court's leave," provided that [t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). "Leave to

amend should be liberally granted in the interest of justice." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999).

Because "[t]he thrust of Rule 15(a) is to allow parties to have their claims heard on the merits," courts "should liberally grant leave to amend when 'the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief.'" *In re Engle Cases*, 767 F.3d 1082, 1108 (11th Cir. 2014) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). However, a court may deny a motion for leave to amend "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *In re Engle Cases*, 767 F.3d at 1108-09.

A motion for leave to amend is futile "where the new claims asserted would be subject to dismissal as a matter of law." *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1263 (11th Cir. 2004) (citing *Burger King Corp. v. Weaver*, 169 F.3d at 1320). "Because justice does not require . . . courts to waste their time on hopeless cases, leave may be denied if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008). "Accordingly, a court must consider whether an amended claim would survive a motion to dismiss for failure to state a claim." *Ohai v. Delta Community Credit Union (In re Ohai)*, Case No. 12-65475-WLH, 2023 WL 6979359, at *7 (Bankr. N.D. Ga. Oct. 19, 2023).

Based on the guidance from the Eleventh Circuit on amendments to pleadings, the Court evaluates the Motion for Leave in the context of whether the Amended Complaint would survive a motion to dismiss for failure to state a claim. *Id.* The Court construes the Amended Complaint "liberally to afford review on any 'legally justifiable base.'" *Smith v. United States*, 420 Fed. Appx.

944, 945 (11th Cir. 2011) (citing *Sanders v. United States*, 113 F.3d 184, 187 (11th Cir. 1997)). Because pro se litigants often "lack familiarity with bankruptcy law and procedure," the court "liberally construes pro se pleadings to permit consideration of the relief sought within the applicable legal and procedural limitations." *In re Stenson*, Case No. 05-93978, 2005 WL 6488095, at *1 (Bankr. N.D. Ga. Nov. 17, 2005). *See also Isaac v. IMRG*, 224 Fed. Appx. 907, 909 (11th Cir. 2007) (citing *Faulk v. City of Orlando*, 731 F.2d 787, 789 (11th Cir. 1984)). However, even under a liberal construction of the pleadings, an adversary proceeding should be dismissed under Rule 12(b)(6) where it appears that the alleged facts fail to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, to survive a Rule 12(b)(6) motion, "the plaintiff's factual allegations, when assumed to be true, 'must be enough to raise a right to relief above the speculative level.'" *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (citation omitted).

At the Rule 12(b)(6) stage, the court primarily considers – but is not limited to – the allegations contained within the four corners of the complaint. *Long v. Slaton*, 508 F.3d 576, 578 n.3 (11th Cir. 2007). However, a court may take judicial notice of court filings when considering a motion to dismiss. *Kramer v. First NLC Financial Services, LLC (In re First NLC Financial Services, LLC)*, 410 B.R. 726, 729 (Bankr. S.D. Fla. 2008).

B.  *Legal Services Liability Actions*

In this adversary proceeding, all alleged claims and causes of action in the Complaint and the Amended Complaint are inextricably linked to the Sanctions Order and the attorney-client relationships among the Debtor, Mr. Bush, the Firm, Mr. Stanfield, and Brock & Stout. The Debtor alleges that the attorneys and their firms did not fully communicate with her the terms of their

employment and compensation. She further alleges that one or more of them concealed the terms of employment and compensation from her in a manner that deprived her of money she was entitled to under the Sanctions Order.

The Complaint and Amended Complaint allege a "legal service liability action," as defined under the Alabama Legal Services Liability Act:

> Any action against a legal service provider in which it is alleged that some injury or damage was caused in whole or in part by the legal service provider's violation of the standard of care applicable to a legal service provider. A legal service liability action embraces all claims for injuries or damages or wrongful death whether in contract or in tort and whether based on an intentional or unintentional act or omission. A legal services liability action embraces any form of action in which a litigant may seek legal redress for a wrong or an injury and every legal theory of recovery, whether common law or statutory, available to a litigant in a court in the State of Alabama now or in the future.

ALA. CODE § 6-5-572. All causes of actions brought against legal service providers in Alabama are to be brought under the Alabama Legal Services Liability Act. ALA. CODE § 6-5-573; *Yarbrough v. Eversole*, 227 So.3d 1192, 1196 (Ala. 2017); *Ex parte Edwards*, 299 So.3d 238, 242 (Ala. 2020). The statute of limitations under the Alabama Legal Services Liability Act is set out in ALA. CODE § 6-5-574(a), which provides, without limitation:

> All legal service liability actions against a legal service provider must be commenced within two years after the act or omission or failure giving rise to the claim, and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; provided, further, that in no event may the action be commenced more than four years after such act or omission or failure; except, that an act or omission or failure giving rise to a claim which occurred before August 1, 1987, shall not in any event be barred until the expiration of one year from such date.

In this case, the Debtor complains of the failure to remit to her $3,000.00 in damages under the Sanctions Order. Even if her allegations regarding failure to obtain a signed contingency fee agreement are true, her claims are barred by the statute of limitations set forth in ALA. CODE § 6-5-574. The Court served her a copy of the Sanctions Order on May 8, 2019. The Debtor signed the Authorization and Acknowledgement and received a disbursement of $2,150.00 on July 1, 2021. It was on this date that any actionable "act or omission giving rise to the claim" would have occurred, and it was on this date that the Debtor "could reasonably have discovered" the alleged wrongdoing by the Firm because she would have seen the discrepancy between the Sanctions Order on the one hand and the Authorization and Acknowledgement on the other. Because the Debtor did not commence the State Court Lawsuit until over two years after July 1, 2021, her claims are barred by the statute of limitations. *See* ALA. CODE § 6-5-574.

C. *Breach of Fiduciary Duty*

Even if the Amended Complaint – construed liberally in favor of the Debtor as a *pro se* litigant – could circumvent the Alabama Legal Services Liability Act, her claims still are subject to dismissal for failure to state a claim. With respect to the Debtor's allegation of "Legal Malpractice-Breach of Fiduciary Duty," the applicable statute of limitations is two years pursuant to ALA. CODE § 6-2-38(l). *Hensley v. Poole*, 910 So.2d 96, 101 (Ala. 2005). Courts considering breach of fiduciary duty claims often note that the statute of limitations may be tolled under ALA. CODE § 6-2-3 if the existence of a cause of action has been fraudulently concealed. *See DGB, LLC v. Hinds*, 55 So.3d 218, 224 (Ala. 2010) (citing *Holdbrooks v. Central Bank of Alabama, N.A.*, 435 So.2d 1250, 1251 (Ala. 1983)). In essence, "'[a] party cannot profit by his own wrong in concealing a cause of action against himself until barred by limitation." *DGB, LLC v. Hinds*, 55 So.3d at 224 (citations omitted). In this case, however, any concealment would have been revealed

when the Debtor signed the Authorization and Acknowledgment and received $2,150.00 from the Firm, as that is when the alleged discrepancy between the Sanctions Order and the amount received would have been apparent. Accordingly, a cause of action for breach of fiduciary duty would be barred by the statute of limitations, rendering amendment of the Complaint futile.

D.  *Fraud*

Regarding the Debtor's allegation of "Legal Malpractice-Fraud Misrepresentation of Material Facts," the applicable statute of limitations is two years, as set forth in ALA. CODE § 6-2-38(l). *Foremost Ins. Co. v. Parham*, 693 So.2d 409, 417 (Ala. 1997). A fraud claim accrues, "thus commencing the running of the statutory limitations period, when the plaintiff discovered the fraud or when the plaintiff should have discovered the fraud in the exercise of reasonable care." *Id*. The Court is not persuaded that any fraud occurred at all, given that: the Debtor signed the Contingency Fee Agreement; the Application disclosing the terms of compensation is a matter of public record; and the order approving the Application was served on the Debtor. However, even accepting the allegation of fraud as true, the Debtor could have discovered such alleged fraud in the exercise of reasonable care no later than July 1, 2021, when she signed the Authorization and Acknowledgment and received $2,150.00. Accordingly, a cause of action for fraud would be barred by the statute of limitations, rendering amendment of the Complaint futile.

E.  *Conversion*

Construing the Debtor's allegation of "Legal Malpractice-Conversion" liberally, the applicable statute of limitations is six years. ALA. CODE § 6-2-34(3). While the Debtor's purported claim for conversion is not barred by the statute of limitations, the Court finds that the Debtor cannot allege a plausible claim for conversion. The Alabama Supreme Court has addressed conversion in the context of money:

Case 23-03020   Doc 24   Filed 01/29/24   Entered 01/29/24 12:01:15   Desc Main
Document     Page 14 of 16

> To establish conversion, one must present proof of a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a *wrongful detention* or interference with another's property. It is well settled that money may be subject to a conversion claim, where there is an obligation to keep that money intact or to deliver it. Generally, an action for *conversion of money* will not lie unless the money is *specific and capable of identification.*

*Riscorp, Inc. v. Norman*, 915 So.2d 1142, 1152 (Ala. 2005) (quoting *Crown Life Ins. Co. v. Smith*, 657 So.2d 821, 823 (Ala. 1994) (citations omitted; emphasis added)).

In the context of this adversary proceeding, the money demanded by the Debtor is not specific and capable of identification. *See Gray v. Liberty Nat. Life Ins. Co.,* 623 So.2d 1156, 1160 (Ala. 1993) ("An action alleging conversion of cash lies only where the money involved is 'earmarked' or is specific money capable of identification, e.g., money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum."). In this case, the Debtor has alleged only that the proposed defendants were required to deliver a specific amount of money, not specific money itself. As such, the Debtor has not stated a claim for conversion. *See Boler v. Bank of America, N.A.*, Case No. 2:17-cv-00303, 2017 WL 6555343, at *6 (N.D. Ala. Dec. 22, 2017) ("[Plaintiff] has merely alleged that the Defendants were required to deliver a specific amount of money—the amount of the insurance check—not any specific money itself. Stated differently, [Plaintiff] has not alleged or shown that he was entitled to receive the precise insurance check that was conveyed to the Defendants, but rather that he was entitled to the "sum certain" represented by the check. Such an allegation is insufficient to give rise to a conversion claim."); *Edwards. v. Prime, Inc.*, 602 F.3d 1276, 1304 (11th Cir. 2010) ("Identifiable amounts of money are one thing, specific money capable of

identification is another. . . . [A]n action for the conversion of money requires the money itself, not just the amount of it, to be specific and capable of identification.").

However, even if the Court were to assume for purposes of the Motion for Leave that the money the Debtor complains of is "specific and capable of identification," the record in the Debtor's bankruptcy cases and this adversary proceeding establishes that there was not a wrongful taking of the Debtor's property. The Application was approved by the Court and authorized the Firm's retention of $2,150.00 from amounts collected under the Sanctions Order. The Debtor conceded as such when she signed the Authorization and Acknowledgment and Contingency Fee Agreement. Therefore, a cause of action for conversion could not survive a motion to dismiss, rendering amendment of the Complaint futile.

### IV. CONCLUSION

For the foregoing reasons, the Court finds that even if the Debtor were to amend the Complaint, the asserted claims and causes of action would be barred by the applicable statutes of limitations or otherwise would be subject to dismissal for failure to state a claim upon which relief may be granted, rendering amendment to the Complaint futile. Accordingly, the Motion for Leave is DENIED.

Done this 29th day of January, 2024.

*[signature]*

Christopher L. Hawkins
United States Bankruptcy Judge

c: Plaintiff
    Anthony B. Bush, Attorney for Defendant
    T. Randolph Harrold, Attorney for Defendant
    Joseph E. Stott, Attorney for Defendant
    Christopher L. Stanfield
    Michael Brock

- 16 -

Case 23-03020 Doc 24 Filed 01/29/24 Entered 01/29/24 12:01:15 Desc Main
Document Page 16 of 16